UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| STEVEN C. ELLIS, et al., } | |
| } | |
| Plaintiffs, } | |
| } | |
| v. } | Case No.: 2:19-cv-00310-RDP |
| } | |
| BANK OF AMERICA NA, et al., } | |
| } | |
| Defendants. } | |

**MEMORANDUM OPINION**

This case is before the court on the Motions to Dismiss filed by Defendants Mortgage Electronic Registration Systems, Inc. ("MERS") (Doc. # 21), Federal National Mortgage Association ("Fannie Mae") (Doc. # 22), and Bank of America NA ("Bank of America") (Doc. # 23) (collectively, "Defendants"). The Motions to Dismiss have been fully briefed (Docs. # 31-34) and are ripe for decision. After careful review, and for the reasons explained below, the court concludes that Defendants' Motions to Dismiss are due to be granted in part.

**I.     Factual and Procedural History**

This case concerns a mortgage on the residence of Plaintiffs Steven Ellis and Michelle Ellis ("Plaintiffs"). Plaintiffs claim that Defendants violated the terms of the mortgage agreement -- as well as several federal statutes -- while servicing the mortgage and conducting foreclosure proceedings.

The following is based upon the well-pleaded factual allegations of Plaintiffs' Complaint. Plaintiffs purchased property located at 2115 Old Cahaba Place, Helena, AL 35080. (Doc. # 16 at 3, ¶ 5). On May 30, 2003, Plaintiffs executed a mortgage loan and promissory note with New

1

South Federal Savings Bank ("NSFSB"),[1] and they also executed a mortgage with MERS as "nominee" for NSFSB. (Doc. # 16 at 3, ¶ 5). According to the amended complaint, the mortgage contract with NSFSB "provides for an escrow account for the taxes and insurance," and the mortgagee is required to pay for the insurance and taxes from the amounts contained in the escrow account. (Doc. # 16 at 3, ¶ 5). Additionally, the mortgage contains an acceleration provision and allows for certain remedies in the event of a beach. (Doc. # 16 at 3, ¶ 5). The mortgage also "provides that Lender shall give notice to the borrower prior to acceleration following borrower's breach of any covenant or agreement in this Security Instrument." (Doc. # 16 at 3, ¶ 5).

Currently, Plaintiffs' loan is owned by Fannie Mae. (Doc. # 16 at 4, ¶ 8). Bank of America served as Plaintiffs' loan servicer for Plaintiffs from 2008 to 2013. (Doc. # 16 at 6, ¶ 12). Ditech[2] replaced Bank of America as the loan servicer from 2013 until June 23, 2017, when New Residential Mortgage became the loan servicer and continues to occupy that position. (Doc. # 16 at 4, ¶ 8). Plaintiffs contend that the assignments and transfers of the note and mortgage are "defective, void, or otherwise unenforceable." (Doc. # 16 at 5, ¶ 9).

Plaintiffs also assert that Defendants Bank of America and Fannie Mae, as well as Ditech[3] and New Residential Mortgage,[4] "failed and refused to apply [Plaintiffs'] monthly payments properly, [failed to] accept the proper payments, . . . inflated the amount due, . . . improperly

---

[1] According to Plaintiffs' Amended Complaint, the original principal amount on the loan was $186,027.00, and the principal and interest payment was set at $1012.90. (Doc. # 16 at 3, ¶ 5).

[2] Plaintiffs assert that Ditech "is the sub-servicer of the loan for current servicer [New Residential Mortgage] and has most of the direct contact with the debtor. (Doc. # 16 at 4-5, ¶ 8). Ditech is also the party which is "currently collecting the payments and sending any notices or letters to the homeowner." (Doc. # 16 at 6, ¶ 12).

[3] Ditech Financial LLC moved this court to stay the proceedings with respect to the claims against them on April 19, 2019. (Doc. # 18). This court granted Defendant Ditech's motion on April 22, 2019, and the claims against Ditech are stayed pending resolution of its bankruptcy proceedings.

[4] New Residential Mortgage LLC was issued a summons on May 1, 2019. (Doc. # 26). They have yet to file anything in this court in response to Plaintiffs' Amended Complaint.

charged fees and expenses not authorized by the mortgage contract," and failed to send proper monthly statements to them. (Doc. # 16 at 3, 7). Plaintiffs claim that they are current on their mortgage payments, not in default on the loan, and not under any threat of foreclosure. (Doc. # 16 at 3, ¶ 6). They state that this case "was filed to address mortgage servicing related issues." (Doc. # 16 at 4-5, ¶ 6).

Plaintiffs' Amended Complaint advances the following claims against Defendants Bank of America, Ditech, Fannie Mae, and New Residential Mortgage: Negligence, Wantonness, Unjust Enrichment, and Breach of Contract. (Doc. # 16). Plaintiffs also assert claims against Ditech and New Residential Mortgage for Violations of the Truth in Lending Act ("TILA"), the Real Estate Settlement Procedures Act ("RESPA"), and the Telephone Consumer Protection Act ("TCPA"). (Doc. # 16). Finally, Plaintiffs assert a claim against New Residential Mortgage for declaratory relief. (Doc. # 16 at 43).

## II. Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Pleadings that contain nothing more than "a formulaic recitation of the elements of a cause of action" do not meet Rule 8 standards, nor do pleadings suffice that are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557. In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007). Moreover, the court must liberally construe Plaintiffs' Amended Complaint because they submitted the complaint

3

*pro se*. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Having said that, "[a] district court can generally consider exhibits attached to a complaint in ruling on a motion to dismiss, and if the allegations of the complaint about a particular exhibit conflict with the contents of the exhibit itself, the exhibit controls." *Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that well-pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

## III. Analysis

Defendants Fannie Mae, Bank of America, and MERS seek dismissal of Plaintiffs' claims, arguing that none of Plaintiffs' claims present a plausible cause of action. (Docs. # 21, 22, 23). The court addresses each claim below, in turn, and does so on a defendant-specific basis.

### A. MERS

In their Response to Defendant MERS' Motion to Dismiss, Plaintiffs acknowledge that they are not pursuing any claims against Defendant MERS and therefore do not oppose the granting of its motion to dismiss. (Doc. # 33). Consequently, Defendant MERS' Motion to Dismiss (Doc. # 21) is due to be granted.

### B. Bank of America and Fannie Mae

#### i. Plaintiffs' Shotgun Pleading

Before addressing the actual substantive claims in Plaintiffs' Amended Complaint, it is necessary to first address the shotgun nature of the amended pleading. In their motions to dismiss, Bank of America and Fannie Mae first argue that under Federal Rules of Civil Procedure 8 and 12(b)(6), Plaintiffs' Amended Complaint should be dismissed because it is a "shotgun pleading."[5] (Doc. # 23 at 2). This court agrees.

A shotgun pleading is characterized by:

> (1) multiple counts that each adopt the allegations of all preceding counts; (2) conclusory, vague, and immaterial facts that do not clearly connect to a particular

---

[5] Notably, Bank of America asserts that Plaintiffs' Amended Complaint (Doc. # 16) is their "third attempt to draft a complaint that complies with federal pleading standards." (Doc. # 23 at 2). Specifically, Bank of America states that Plaintiffs filed a "nearly identical" complaint against it in the Circuit Court of Shelby County on July 24, 2018. (Doc. # 23 at 2). Bank of America then removed that case to federal court on August 29, 2018, and on January 7, 2019, after failing to comply with a show cause order, Plaintiffs voluntarily dismissed their complaint without prejudice. (Doc. # 23 at 3). Subsequently, four days later, Plaintiffs filed the "subject complaint" in state court (Doc. # 23 at 3). After removal to this court, Bank of America moved to dismiss the complaint for failure to comply with Rule 8. (Doc. # 23 at 3). Plaintiffs then filed leave to amend their complaint, and Bank of America claims that Plaintiffs' current Amended Complaint contains "identical" claims against each Defendant that were deemed deficient the first time through. (Doc. # 23 at 3).

5

cause of action; (3) failing to separate each cause of action or claim for relief into distinct counts; or (4) combing multiple claims against multiple defendants without specifying which defendant is responsible for which act.

*McDonough v. City of Homestead*, 771 F. App'x 952, 955 (11th Cir. 2019); *see Jackson v. Bank of America, N.A.*, 898 F.3d 1348, 1356 (11th Cir. 2018). The Eleventh Circuit has "little tolerance for shotgun pleadings"[6] and has held that "in a case in which a party, plaintiff or defendant, files a shotgun pleading, the district court 'should strike the [pleading] and instruct counsel to replead the case—if counsel [can] in good faith make the representations required by Fed. R. Civ. P. 11(b).'" *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294 (11th Cir. 2018); *Jackson*, 898 F.3d at 1357. Implicit in this "notion [is] that if the plaintiff fails to comply with the court's order—by filing a repleader with the same deficiency—the court should strike his pleading or, depending on the circumstances, dismiss [the] case and consider the imposition of monetary sanctions." *Jackson*, 898 F.3d at 1357; *Shabanets*, 878 F.3d at 1295 ("A district court has the 'inherent authority to control its docket and ensure the prompt resolution of lawsuits,' which includes the ability to dismiss a complaint on shotgun pleading grounds."). Shotgun pleadings "waste scarce judicial resources, 'inexorably broaden[ ] the scope of discovery,' 'wreak havoc on appellate court dockets,' and 'undermine[ ] the public's respect for the courts.'" *Shabanets*, 878 F.3d at 1295.

Here, Plaintiffs' Amended Complaint contains many of the same allegations (if not nearly identical ones) that were advanced in their original complaint. For example, in the original complaint, Plaintiffs stated:

---

[6] In *Jackson*, after attempting to understand what the plaintiff's attorney -- the same attorney in this case -- was claiming, the Eleventh Circuit felt the need to state its frustrations: "After spending fifty-four pages unpacking the pleading just to determine whether the amended complaint presented a cognizable basis for relief, the District Court dismissed the case with prejudice for failure to state a claim. We affirm the District Court's judgment, but we do so on an alternative ground. By attempting to prosecute an incomprehensible pleading to judgment, the plaintiffs obstructed the due administration of justice in the District Court. And they are doing the same here in urging this Court to uphold the sufficiency of their amended complaint." *Jackson*, 898 F.3d at 1352.

> The [plaintiffs], upon information and belief, contend that the alleged Assignment of the note and mortgage is defective, void, or otherwise unenforceable as to the security instrument in question in this case.
>
> The [plaintiffs] allege that the actions of the Defendants and its agents, employees and servants were wrongful and tortious.

(Doc. # 1-2 at 5, ¶¶ 9-10). In their Amended Complaint, Plaintiffs use the exact same conclusory language:

> The [plaintiffs], upon information and belief, contend that the alleged Assignment of the note and mortgage is defective, void, or otherwise unenforceable as to the security instrument in question in this case.
>
> The [plaintiffs] allege that the actions of the Defendants and its agents, employees and servants were wrongful and tortious.

(Doc. # 16 at 7, ¶¶ 13-14).[7] Neither pleading contains any factual allegation explaining why the assignment is defective, void, or unenforceable. Indeed, both fail to state to whom the assignment was given.

Another example of the Plaintiffs' copy and paste method can be seen by comparing paragraph 19 of the original complaint with paragraph 21 of the current amendment:

> The Defendants negligently serviced the loan made the basis of this suit, negligently attempted to collect sums not owed by the Plaintiffs, negligently caused their property insurance to be canceled, were negligent by failing to make sure that information disseminated to others (including the national credit bureaus and those credit grantors likely to use the information provided by those bureaus) was not false, neither libelous nor slanderous, and rose to the level of maximum accuracy; negligent by failing to properly train their employees on the thorough investigation of disputed accounts; negligent by failing to properly train, and/or supervise their employees and agents with regard to the handling of Plaintiffs' loan account and failing to remove the adverse reporting from Plaintiffs' credit once he disputed the same.

(Doc. # 1-2 at 6, ¶ 19).

---

[7] The same language used here in the amended complaint and in the original complaint are also used in Plaintiffs' Response in Opposition to Fannie Mae and Bank of America's Motions to Dismiss. (Docs. # 31 at 10-11; 32 at 10-11). In fact, with few exceptions, Plaintiffs' Response to both Defendant Fannie Mae and Bank of America are identical. (*See* Docs. # 31, 32).

> The Defendant, Bank of America, negligently serviced the loan made the basis of this suit, negligently attempted to collect sums not owed by the Plaintiffs, negligently caused their property insurance to be canceled, were negligent by failing to make sure that information disseminated to others (including the national credit bureaus and those credit grantors likely to use the information provided by those bureaus) was not false, neither libelous nor slanderous, and rose to the level of maximum accuracy; negligent by failing to properly train their employees on the thorough investigation of disputed accounts; negligent by failing to properly train, and/or supervise their employees and agents with regard to the handling of Plaintiffs' loan account and failing to remove the adverse reporting from Plaintiffs' credit once they disputed the same.

(Doc. # 16 at 9, ¶ 21).

While Plaintiffs have at least gone through the motions of attempting to distinguish the amended complaint from the original complaint, and, in particular, differentiated between Defendants in each count and each factual allegation, the amended complaint still fails to meet the requirements of Rule 8. Plaintiffs have wholly failed to give a short and plain statement of the facts surrounding their claims.[8] By filing their amended complaint, Plaintiffs attempted "halfheartedly to cure only one of the [complaint's] many ailments by naming which counts pertained to each Defendant." *Jackson*, 898 F.3d at 1359. Plaintiffs argue that "[t]he liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system." (Doc. # 31 at 4). While that is true in a general sense, they miss this key point: a party cannot enjoy the benefits of such liberal standard when their amended complaint utterly fails to give Defendants "notice" of what Plaintiffs are

---

[8] Plaintiffs' Amended Complaint is incomprehensible with respect to each Count. Plaintiff includes names of Defendants and dates of alleged wrongful conduct in each count, regardless of who the count is brought against. For instance, one of Plaintiffs' claims in Count Nine (which is a breach of contract claim against Fannie Mae) Plaintiffs state: "On November 8, 2013, Ditech improperly and wrongfully sent a payment back to [the plaintiffs]. In August 2006 Bank of America improperly charged the Plaintiffs account with over $500 in late fees. In June 2013 Bank of America failed to remove PMI charges. When the account was turned over to Ditech in July 2013, Ditech failed to remove [the] PMI [charges] as it was contractually obligated to do." (Doc. # 16 at 20, ¶ 73). First, there is no mention of Fannie Mae in this paragraph whatsoever, even though this particular count is directed against Fannie Mae. Second, these conclusory statements without any factual allegations do not support these claims. And third, it is almost impossible for the court, let alone the Defendants, to discern what is being alleged here.

actually claiming. Specifying the Defendant in each allegation, alone, is not enough to cure the defects that plagued the original complaint and that continue to plague the amended complaint.

### ii. Plaintiffs' Claims Against Bank of America Fail as a Matter of Law

Bank of America and Fannie Mae argue that if the court finds that the complaint is not a shotgun pleading, the court should find that all of Plaintiffs' claims fail as a matter of law. (Doc. # 23 at 6). Specifically, Bank of America and Fannie Mae assert that (1) Plaintiffs' claims of negligence and wantonness fail because there is no cause of action for negligent servicing; (2) Plaintiffs' claim for unjust enrichment fails because there is an express contract between the parties; and (3) Plaintiffs' claim for breach of contract fails to state a claim for which relief can be granted. (Doc. # 23 at 7). The court will address each claim, in turn, and concludes that Bank of America's and Fannie Mae's motions to dismiss are due to be granted.

**Negligence/Wantonness Claims**

Plaintiffs allege that Bank of America and Fannie Mae negligently and/or wantonly serviced Plaintiffs' loan by attempting to:

> collect sums not owed by the Plaintiffs, negligently caus[ing] their property insurance to be canceled, [negligently] . . . failing to make sure that information disseminated to others (including the national credit bureaus and those credit grantors likely to use the information provided by those bureaus) was not false, neither libelous nor slanderous, and rose to the level of maximum accuracy; [negligently] . . . failing to properly train their employees on the thorough investigation of disputed accounts; [negligently] . . . failing to properly train, and/or supervise their employees and agents with regard to the handling of Plaintiffs' loan account[,] and failing to remove the adverse reporting from Plaintiffs' credit once they disputed the same.

(Doc. # 16 at 9, ¶¶ 21, 30).

Under Alabama law, to establish negligence, "[a] plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury." *Martin v. Arnold*, 643 So. 2d 564, 567 (Ala. 1994) (quoting *Albert v. Hsu*, 602 So. 2d 895, 897

(Ala. 1992)). "To establish wantonness, [a] plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty. To be actionable, that act or omission must proximately cause the injury of which the plaintiff complains." *Martin*, 643 So. 2d at 567. "To establish a claim for negligent, reckless or wanton supervision, a plaintiff must show that '(1) the employee committed a tort recognized under Alabama law, (2) the employer had actual notice of this conduct or would have gained such notice if it exercised due and proper diligence, and (3) the employer failed to respond to this notice accurately.'" *Shuler v. Ingram & Assocs.*, 710 F. Supp. 2d 1213, 1227-28 (N.D. Ala. 2010) (quoting *Edwards v. Hyundai Motor Mfg. Ala., LLC*, 603 F. Supp. 2d 1336, 1357 (M.D. Ala. 2009)), *aff'd*, 441 F. App'x 712 (11th Cir. 2011).

Counts One and Two of Plaintiffs' Amended Complaint fail to state a viable claim because Alabama "does not recognize a tort-like cause of action for the breach of a duty created by contract." *McClung v. MERS, Inc.*, 2012 WL 1642209, at *7-8 (N.D. Ala. May 7, 2012) (quotation omitted) ("[A] negligent failure to perform a contract . . . is but a breach of the contract."). *See also Barber v. Bus. Prods. Ctr., Inc.*, 677 So. 2d 223, 228 (Ala. 1996) ("[A] mere failure to perform a contractual obligation is not a tort."), *overruled in part on other grounds by White Sands Grp., L.L.C. v. PRS II, LLC*, 32 So. 3d 5 (Ala. 2009). "A tort claim can only be assessed when the duty of reasonable care, which one owes to another in the course of day-to-day affairs, has been breached and causes personal injury or property damages." *McClung*, 2012 WL 1642209, at *7. It follows that Alabama law "does not recognize a cause of action for negligent or wanton mortgage servicing." *McClung*, 2012 WL 1642209, at *8 (dismissing the plaintiff's claim for negligent, careless, and wanton mortgage servicing) (citing *Blake*, 845 F. Supp. 2d at 1210); *U.S. Bank Nat'l Ass'n v. Shepherd*, 202 So. 3d 302, 314-15 (Ala. 2015) (holding that wantonness claims for

10

servicing and handling mortgages are improper because the underlying duties are established by contract); *Prickett v. BAC Home Loans*, 946 F. Supp. 2d 1236, 1244 (N.D. Ala. 2013) (same).

Any obligations Bank of America and Fannie Mae owed to Plaintiffs arose from the mortgage agreement, note, and settlement agreement between Plaintiffs and Bank of America and Fannie Mae pertaining to the mortgage account. These obligations do not give rise to a duty of reasonable care generally owed to members of the public. Accordingly, because the duties Plaintiffs contend Bank of America and Fannie Mae breached are based on contractual agreements, Plaintiffs' negligence and wantonness claims are not legally cognizable under Alabama law. *Shepherd*, 202 So. 3d at 314-15. Relatedly, Plaintiffs also present negligent training and supervision allegations in Counts One and Two but fail to allege specific facts as to how or why Bank of America and Fannie Mae were negligent in training its employees.[9]

Because the underlying negligence and wantonness claims fail as a matter of law, it follows that Plaintiffs' claims for negligent and wanton training and supervision also fail because the only Alabama tort claims underlying those causes of action are the non-cognizable negligent and wanton servicing claims. *See Costine v. BAC Home Loans*, 946 F. Supp. 2d 1224, 1235 (N.D. Ala. 2013) (dismissing similar negligent hiring and training claims).

**Unjust Enrichment Claims**

Plaintiffs allege that Bank of America and Fannie Mae were unjustly enriched by charging Plaintiffs "fees[] and expenses which were not permitted," (Doc. # 16 at 15, ¶ 53), and they seek "all allowable damages under law as a result of Bank of America's [and Fannie Mae's] wrongful

---

[9] Plaintiffs state in Count One and Count Four of their amended pleading that Bank of America was "negligent by failing to properly train their employees on the thorough investigation of disputed accounts; negligent by failing to properly train, and/or supervise their employees and agents with regard to the handling of Plaintiffs' loan account." (Doc. # 16 at 9, ¶ 21; 11, ¶ 30). This is the extent of Plaintiffs' allegations surrounding negligent training/supervision. Such an allegation is wholly unsatisfactory through the lens of Rule 8.

conduct and unjust enrichment. (Doc. # 16 at 15, ¶ 55). Defendants primarily argue that Plaintiffs' unjust enrichment claim fails because Plaintiffs have an adequate remedy at law—*i.e.*, a breach of contract claim. (Doc. # 23 at 8).

"The doctrine of unjust enrichment is an old equitable remedy permitting the court in equity and good conscience to disallow one to be unjustly enriched at the expense of another." *Flying J Fish Farm v. Peoples Bank of Greensboro*, 12 So. 3d 1185, 1193 (Ala. 2008) (emphasis and internal quotation marks omitted). "It does not generally apply where there is an express contract between the parties governing the same subject matter." *Rice v. JPMorgan Chase Bank, N.A.*, 2014 WL 3889472, at *11 (N.D. Ala. Aug. 5, 2014) (citing *Kennedy v. Polar-BEK & Baker Wildwood P'ship*, 682 So. 2d 443, 447 (Ala. 1996)).

Additionally, Plaintiffs fail to prove how Bank of America and Fannie Mae have been unjustly enriched. In order "[t]o prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." *Matador Holdings, Inc. v. HoPo Realty Investments, L.L.C.*, 77 So. 3d 139, 145 (Ala. 2011) (quotation omitted). Retention of a benefit is unjust if:

> (1) the donor of the benefit . . . acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit . . . engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship. In the absence of mistake or misreliance by the donor or wrongful conduct by the recipient, the recipient may have been enriched, but he is not deemed to have been *unjustly* enriched.

*Mantiply v. Mantiply*, 951 So. 2d 638, 654-55 (Ala. 2006) (quoting *Welch v. Montgomery Eye Physicians, P.C.*, 891 So. 2d 837, 843 (Ala. 2004).

Here, there is no plausible allegation that Bank of America or Fannie Mae retained any benefit from Plaintiffs as a result of unconscionable or wrongful conduct. To be sure, Plaintiffs do not even attempt to highlight which charges were unauthorized, how or why Defendants conduct was illegal, or any factual allegations regarding how Defendants failed to ensure that information disseminated to "others" was accurate. (Doc. # 16 at 11, ¶ 30). Therefore, Plaintiffs fail to adequately allege that Defendants have been enriched, let alone *unjustly* enriched.

**Breach of Contract**

Plaintiffs contend that Bank of America and Fannie Mae "have been in a contractual relationship with Bank of America . . . and Fannie Mae within the last 6 years," and they note that the loan was assigned from the original lender to them. (Doc. # 16 at 18, ¶ 67). And, due to such a contractual relationship, Plaintiffs claim that Defendants "improperly serviced the loan by failing to apply payments correctly, misapplying payments, holding payments improperly in suspense accounts, and failing to [properly apply] credit payments." (Doc. # 16 at 20, ¶ 70). For example, Plaintiffs claim that in "November and December 2012, [Plaintiffs] sent a monthly payment to Defendant, Bank of America[,] which it accepted and cashed but failed to properly apply the payments to their account pursuant to paragraph $2^{10}$ of the mortgage contract."[11] (Doc, # 16 at 20, ¶ 71). Defendants, however, argue that Bank of America is not a party to the mortgage, and, also with respect to Fannie Mae, that some of the claims are barred by the statute of limitations, and the count is insufficiently plead. (Doc. # 23 at 10; # 22 at 10).

---

[10] Plaintiffs failed to include the language of paragraph two of the mortgage contract in either the amended complaint or as an attachment.

[11] Curiously, Plaintiffs allege that in August 2006, Bank of America "improperly charged [their] account with over $500 in late fees." (Doc. # 16 at 20, ¶ 73). However, in the Amended Complaint's Statement of Facts, Plaintiffs state that Bank of America did not receive the assignment of their loan until 2008. (Doc. # 16 at 6, ¶ 12). As such, the court is confused as to how this would be possible. Even if this claim was accurate and proper, it would be time-barred by Alabama Code § 6-2-34(9) (2018). Also, the court is confused as to why this allegation is included in Count Nine (Plaintiffs' breach of contract claim against Fannie Mae).

To establish a breach of contract claim under Alabama law, a plaintiff must prove four elements: (1) a valid contract binding the parties; (2) plaintiff's performance under the contract; (3) defendant's nonperformance; and (4) plaintiff's resulting damages. *State Farm Fire & Cas. Co. v. Slade*, 747 So. 2d 293, 303 (Ala. 1999). A valid contract requires an offer and an acceptance, consideration, and mutual assent to the essential terms for formation. *Ex parte Jackson Cty. Bd. of Educ.*, 4 So. 3d 1099, 1103 (Ala. 2008). Implied contracts can be formed "where there is a bargained-for exchange contemplated by the parties, but no overt expression of agreement." *Id.* at 1104 (quoting *Ellis v. City of Birmingham*, 576 So. 2d 156, 157 (Ala. 1991)).

Here, Defendants argue that Bank of America is a prior servicer of the loan and was never a "party" to the mortgage. (Doc. # 23 at 10). Yet, Plaintiffs have put forth no factual allegations about Bank of America's interest in the mortgage other than its position as a prior servicer. *Bank of America, N.A., v. Zaskey*, 2016 WL 2897410, at *6 (S.D. Fla. May 18, 2016) (quoting *James v. Litton Loan Servicing, L.P.*, No. 4:09-CV-147 CDL, 2011 WL 59737 (M.D. Ga. Jan. 4, 2011) ("Plaintiffs did not . . . allege that they had a contract with [defendant], nor did they point to any evidence of such contract. As a loan servicer, [defendant] is not a party to or an assignee of the Note itself. In the absence of evidence of a contract between Plaintiffs and [defendant], Plaintiffs' breach of contract claim fails.")); *see also Edwards v. Ocwen Loan Serv., LLC*, 24 F. Supp. 3d 21, 28 (D.D.C. 2014) ("Judges around the country . . . held that a loan servicer, as a lender's agent, has no contractual relationship or privity with the borrower and therefore cannot be sued for breach of contract.").

Plaintiffs have not pointed to any plausible allegation indicating that the mortgage contract required Bank of America, or any Defendant for that matter, to inform Plaintiffs of any past or future assignment of the loan, nor have they established that Bank of America was in fact a party

14

in interest to the mortgage contract. Without such a plausible factual assertion, there can be no plausible claim for relief.

With regard to Fannie Mae, Plaintiffs' claim for breach of contract (Count Nine) attempts to hold Fannie Mae in breach for the alleged actions of Bank of America. Specifically, Plaintiffs contend that Ditech and Bank of America are "agents" of Fannie Mae as its servicer and therefore Fannie Mae is responsible for each of their acts. (Doc. # 16 at 18, ¶ 66). However, apart from this, the court simply cannot make heads or tails of Plaintiffs' breach of contract claim against Fannie Mae. Plaintiffs' Amended Complaint contains allegations of multiple breaches against multiple defendants, and Plaintiffs must replead this count with more specificity and *factual* allegations as to what specifically Fannie Mae did that is in breach of contract.

## IV. CONCLUSION

For the reasons stated above, Defendants Bank of America and Fannie Mae's Motions to Dismiss are due to be granted in part. As to Counts One through Eight of Plaintiffs' Amended Complaint, they are dismissed without prejudice. As to Count Nine of Plaintiffs' Amended Complaint, the court **DIRECTS** Plaintiffs to replead with specificity as to Fannie Mae's breach of contract.

**DONE** and **ORDERED** this September 24, 2019.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE